RUSSELL P. WARE *v.* T. S. COLLINS and Wife.

TRESPASS : ACTION FOR STATUTORY PENALTY FOR CUTTING TREES : PROOF OF TITLE.—Possession of land by the plaintiff, under color and claim of title, is *prima facie* sufficient evidence of ownership, to enable him to maintain an action for the statutory penalty for cutting trees thereon. In such a case, if the defendant relies on want of title in the plaintiff, he must show affirmatively that it is in himself, or some third person.

ERROR to the Circuit Court of Rankin county. Hon. John Watts, judge.

Collins and wife sued Ware, to recover statute penalties for cutting timber on lot 7, sec. 12, T. 5, R. 1 east, in Rankin. They charged that, in 1854, Mrs. Collins owned said lot, and the same was then possession of Holt, as their tenant for that year. That in said year, defendant, against their consent, cut thereon six white oak, and sixty other trees (not being cypress, white oak, pine, poplar, black walnut, pecan, or cherry), then growing on said land, and of great value to their reversion ; whereby defendant was liable, under the statute, to pay ten dollars for each white oak, and three dollars for each other tree cut.

A second count charged that, on the same days, defendant cut down and destroyed on said lot, whilst Holt was such tenant, sixteen white oaks, one hundred hickories, one hundred red oaks, one hundred post oaks, twenty walnuts, fifty pines, fifty water oaks, one hundred black jacks, ten dogwoods, twenty ashes, ten gums, ten sycamores, five poplars, six cypresses, thirty elms, fifty black oaks,

then growing thereon, and of great value to the reversion, to their damage, $1000.

The answer was a general denial.

To show title, plaintiffs read a quit-claim deed for said lot to Mrs. Morgan, from the sheriff of said county, dated March 4, 1848, releasing to her all the interest of the State therein, and reciting that the same was purchased by the State, on the 6th March and 20th February, 1843, as the property of Hadley & Washington, for the taxes of 1842. Also deeds for same from Mrs. Morgan to Sharkey, and from him to Mrs. Collins. They also read a quit-claim deed, dated August 4, 1853, to Mrs. Collins, from T. P. Ware, and Lombard and wife, to said lot, which deed was not recorded.

They proved said lot was in Rankin county, and that Holt was in possession, on the 4th August, 1854, as their tenant; and had been in possession, as such tenant, for the three months previous; that, during that time, defendant cut down thereon six white oaks, and seventy-five or seventy-six other trees, consisting of oaks, hickory, and various other kinds of trees; and then plaintiffs closed.

Defendant read a quit-claim to him for said lot from said Ware, and Lombard and wife, dated March 20, 1854, and duly filed for record the 1st April, 1854, and recorded; and then plaintiffs proved that, at the date of said deed, Holt was in possession as their tenant; which was all the proof.

The court charged for plaintiffs, that, as defendant claimed only under Lombard and Ware, under whom plaintiffs also claimed, it was unnecessary for them to show title back of Lombard and Ware; and, if plaintiffs had the best title from them, and were in possession under that title, it was sufficient ownership to maintain this action,—to which defendant excepted.

The court gave several charges for defendant, which are not necessary to be stated.

Defendant also asked the court to charge, 3d. That the legal owner, only, can sue under the statute; but the court refused this charge, but modified it so as to read that the legal or equitable owner could sue, and gave it as modified, and defendant excepted.

The jury found $267 for plaintiffs,—the precise sum claimed in their writ. Defendant moved for a new trial, because, 1. Of charges

given and refused. 2. The verdict is contrary to law and evidence, and the damages are excessive,—which was refused, and he excepted, and sued out this writ of error.

*George L. Potter*, for plaintiff in error.

1. Plaintiffs produced a deed from Lombard and Ware, but did not show title in the latter. It was error, under the circumstances of this case, to charge that, as both parties claimed under them, plaintiffs need show no further title. The rule, that plaintiffs need not show a full title, where both parties claim from one grantor, cannot apply to a case like this, for several reasons:—

First. Because this is a penal action, and the "owner" of the lands is alone entitled to recover the penalty. Hutch. 280, § 7. If both parties showed deeds from Lombard and Ware, they furnished, as evidence, that either was "owner" of the lot. When a statute speaks of the "owner" of land, it means the legal owner. It may be that, on such proof, plaintiffs would be entitled to recover possession in ejectment; but that does not tend to show them entitled to this statute penalty, which is given only to the owner. Evidence, to prove a right of possession, is very different from proof, as alleged here, of a reversion in fee.

Second. But, we say, plaintiffs could not have recovered in ejectment, in this case, as upon proof of a common title; because they did not rely wholly on their deed from Lombard and Ware, but produced a distinct title from Sharkey. When plaintiffs thus claimed under two grantors, and defendant from one only, it is absurd to say they both claimed from a common source. The rule is founded on a supposed estoppel, and estoppels must be mutual. When plaintiffs produced their title from Sharkey, and relied on it, they could not apply the rule against defendant, as to the title of Lombard and Ware. They could not preclude defendant by that title, when they claimed by another title.

2. But, we say, our title from Lombard and Ware is the better title; and, therefore, the recovery is wrong. Ours is the junior deed, but theirs was not recorded. To this, they replied, that Holt, their tenant, was in possession when defendant purchased. This will not avail to give their unrecorded deed a preference. It may be, that the possession of Holt would affect defendant with notice

VOL. VI.—15

of his rights, but it had no tendency to put defendant on inquiry for a grant to plaintiffs. This court has shown a disposition to restrict the decision in *Starkey* v. *Lacoste :* see *Downing* v. *Henderson.* And we submit, that a subsequent vendee, without actual notice of a prior grant, is affected with constructive notice of the rights of the party only who is in actual possession, and not of those under whom he holds. Plaintiffs had no *pedis possessio,* but a constructive possession. Our point is, that a mere constructive possession is not constructive notice; and that, therefore, defendant was not chargeable with notice of the deed from Lombard and Ware to Mrs. Collins.

Again, what is the extent of this doctrine of constructive notice arising from such possession? Does it affect the world with notice of all manner of diverse titles that the possessor may have to the land? We say not. Such possession puts all others on inquiry as to the claim of the possessor, and binds them to use reasonable diligence to ascertain; but they need not inquire of the party in possession. That is the whole doctrine. If, on inquiry, they find a deed under which the party may be supposed to claim, they need look no further; they take the risk of that deed only, and not of any other of which they have no notice. In this case, plaintiffs had placed on record a deed from Sharkey for this land, and they did so to give the world notice that they claimed under him. Defendant had notice in law of that registered deed. Did the possession of Holt as tenant, put defendant on further inquiry? Admit he had notice of the tenancy. If he must then inquire by what title plaintiffs claim, the law points him to the public records as the proper place for inquiry. He goes there, and finds plaintiffs have recorded the deed from Sharkey as *their evidence of title,* and he finds no more. May defendant stop there? The law says he may, for he has used due diligence, and has found the very deed on which the plaintiffs rely, as they have notified the world by recording it.

It has been held that where a party has possession under a recorded deed, and also has a deed not recorded, his mere possession does not affect third parties with notice of the unrecorded deed. Thus this very case has been decided against plaintiffs. *Great*

*Falls Co.* v. *Worster*, 15 N. H. 412 ; *Rogers* v. *Jones*, 8 N. Hamp. 264.

3. Again, we say the defendant was not proven liable to the statute penalty, because the plaintiffs, as owners of the reversion, were not within the statute. Holt was their tenant, and as such, had the right, under the laws of this country, however it might be in England, to cut down any and all timber specified in the complaint. In this country, a tenant for life may clear the land and cut timber (1 Lomax Real Prop. 50–1) ; and a tenant at will even has the same right. Ib. 150.

By their act of lease, the plaintiffs had thus given to their tenant, Holt, the right to cut and use this timber ; and if it was cut by his authority or consent, defendant is not liable. The statute imposes the penalty, where the cutting is " without the consent of the owner ;" and plaintiffs have placed themselves in a position where they cannot oppose the cutting, and their consent was immaterial. The cutting might be lawful, though they prohibited it ; and unlawful, though they ordered it. Under such circumstances, we submit, they are not entitled to sue for the penalty ; and especially not, without proof that the act was not done by authority or consent of Holt. A tenant is, in law, the owner for the time being, and the right of action was therefore in Holt.

*D. Shelton,* for defendant in error.

If I were to admit, that proof of legal title in the plaintiff, was necessary to enable him to recover in an action like this, it would not change the result. It would scarcely so much as complicate the argument ; for in an action of ejectment, it is certainly true that no person can recover except him who holds the legal title ; that is an action of trespass, in which nothing but the legal title of the plaintiff is involved ; and yet that title is proved for all the purposes of the action, when it is shown that defendant claims only from plaintiff's vendor, and that from him the plaintiff has the superior title. 11 Sm. & M. 335. And especially would that be true, if (as in this case), the defendant does not show that there is some outstanding adverse title.

But, in fact, it was not necessary for us to prove that we held the legal title to the land, or even any title on which an action of

ejectment could have been sustained.   Ware was a wrongdoer, and if we had been in the actual occupancy of the land, we could at common law have maintained trespass *quare clausum fregit*, without showing a legal title; for, to sustain that action against a wrong-doer, only possession is essential; that is sufficient, without regard to the title of the possessor.   2 Stark. Ev. 803; 11 East, 63; 4 B. & C. 585; 5 Bing. 9.   But we made our complaint in the nature of an action on the case, only because we were not in the actual occupancy; but our tenant held its occupancy for a time, and we were entitled to the reversion. 2 Ch. Pl. 778; 12 J. R. 183; 1 Ib. 511.

Now, trespass *quare clausum fregit* is strictly a technical and formal action, governed by rigid rules of pleading and practice, whereas case is an equitable action, allowing much greater latitude of pleading and practice.

It therefore certainly follows, that if trespass could have been maintained for the damage done to the property in our own possession, case can with more certainty be sustained for damage done to our reversion of that property to us, after the termination of our tenant's term.

But it is said we allege title in fee simple, and therefore must prove it.   That is a mistake.   We do allege, "that Holt was occupying the land as our tenant, by a lease that was to expire (in a few months after this suit was brought), the reversion at the time of the trespass, and still belonging to the plaintiffs."   That is no averment of legal title; for if it be true that we did not have a legal title to the land, the reversion after the expiration of our tenant's term certainly did belong to us.   Even that tenant's attornment to another would have been void.

There is, therefore, no reason why plaintiffs were not entitled to maintain their action.

But it is further argued by adverse counsel, that we were not entitled to the "statutory damages," because that statute gives them to the "owner."   The term "owner" is no technical word; it has no such meaning as, "holding the legal title."   Its legitimate meaning is, the person having by himself, or by another, the possession and use of property in his own right (see Richardson's Dictionary, "*Own*"); and if he has these, he is the owner thereof.   If

he be subsequently divested of his possession and use, by a paramount title, he ceases to be the owner. Its meaning is similar to the word freeholder in our jury laws, &c., not meaning the man who has the legal title to the land, but him who, claiming it as his own under that claim, has the possession and use of it. In these inquiries, we never try a man's title to ascertain whether he is a freeholder of the county. If he has in his own right the possession and use of the property, he is the owner of it, and is therefore a freeholder, until he shall be divested of that ownership by some superior title enforced against him. This may be illustrated by mercantile law. That law makes the owners of vessels liable for repairs, &c. It has repeatedly been held that it is not the legal title that determines this liability, but the possession and use of the property in one's own right, that determines the question who are liable as owners. 7 J. R. 308; 15 Ib. 298; 7 Cow. 697.

According to Mr. Potter's argument, the statutory damages could never be recovered against the grossest wrongdoer, without involving a trial of the legal title of the plaintiff, although he may have been enjoying the possession and use of the land for years; although the trespasser may not have a pretence of claim to the land; and, although there may not be a pretence of claim outstanding in another adverse to the plaintiff. Such was not the intention of the legislature. Such is not the proper construction of the statute.

The next error alleged by counsel for plaintiff in error is, that the charge of the court was wrong, and the judgment is wrong, because defendant's title is on the record better than plaintiffs' title. If that were so, I do not think it would change the result of the case, for until he had asserted that title by suit for the possession, it constituted no defence for his trespasses as a wrongdoer. If there had not been an actual adverse possession by us, or our tenant, perhaps the titles would have been tested in this suit. But not so in the present case, when we were, by our tenant, in peaceable possession of the land, and Ware was a trespasser and a wrongdoer.

But it is not true that his title was better than ours. Ours is the eldest title from Lombard and T. P. Ware, and under it we were, by our tenant, in actual occupancy of the land, adversely to Ware. Ours, therefore, is unquestionably the best title, unless he is

entitled to protection against it, as a purchaser without notice. Our deed, it is true, was unrecorded at the time of his purchase, but by our tenant we were in actual possession of the property at the time of Ware's purchase. Unquestionably adverse possession is equivalent to notice. 1 Sm. & M. 107; 1 Ib. 443; 6 Ib. 345; 7 Ib. 456. Nay, more than that: the deed to Ware is champertous and void,—a purchase made while we were in actual, adverse and notorious, possession and occupancy of the land.

But we are told that the possession of Holt, our tenant, is no notice of plaintiffs' adverse claim, but only notice of Holt's rights. The answer is, that Holt had no rights, except ours, and therefore, if instead of becoming a trespasser and a wrongdoer, he had gone to Holt to ascertain the origin of his possession, he could have ascertained our rights. Holt's possession, adversely to him, was at least enough to have stimulated his inquiry before he purchased from Lombard and Ware.

The next point made by adverse counsel is, that we are not entitled to recover as owners of the reversion, because Holt, being our tenant, had the right to cut the timber for which the suit was brought, and to give Ware the right to cut it.

To this position it is answer enough to say that Ware set up no pretence of right derived from Holt, or of permission given by Holt.

But, although it may be true, that a tenant for life may have the right to cut timber, so far as that is necessary for the proper use of his life estate (and that is the full extent of the doctrine), yet it is not true that a tenant for years, or less, has the right to cut any more timber than is necessary for the proper use of his term. It is not true that he has the right to cut down all the timber that he may please to cut. Nor is it true, at all, that he has the right to give to others the right or permission to cut down the timber standing on the land. Upon both branches of that question, therefore, the defence fails.

FISHER, J., delivered the opinion of the court.

This was an action brought under the statute, to recover the specific value for certain trees, alleged to have been cut by the defendant below, upon the lands of the plaintiff.

The case may be made to turn upon a single point, and that is, whether the plaintiffs' possession of the land, claiming it as their own, was sufficient evidence of title to maintain the action. We are clearly of opinion that it was, and that after this proof was made, it was incumbent on the defendant to show title, either in himself, or in some third party, to defeat the action.

No such showing having been made, the verdict of the jury is correct.

Judgment affirmed.